UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GED Integrated Solutions, Inc., | ) | Case No. 5:06-CV-01327-JRA |
| and Newell Operating Company dba | ) | |
| Ashland Products, Inc. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Durotech International, Inc., | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendant. | ) | AND *MARKMAN* ORDER |

**I. Introduction**

This matter is before the Court upon a request by the parties to construe disputed patent claim terms pursuant to *Markman v. Westview Instruments,* 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). Plaintiffs, GED Integrated Solutions, Inc. ("GED") and Newell Operating Company dba Ashland Products ("Newell") allege that Defendant, Durotech, Inc. ("Durotech"), has infringed certain claims of U.S. Patent No. 5,313,761 filed on January 29, 1992, and issued on May 24, 1994, (the "'761 patent") and U.S. Patent No. 5,678,377, filed on February 15, 1994, and issued on October 21, 1997, (the "'377 patent").[1]

**II. Background and Overview of Invention**

The '761 patent covers a spacer assembly for an insulating glass unit. The '377 patent is a continuation-in-part of the application for the '761 patent and covers the clip for securing a

---

[1] The Court will refer collectively refer to Plaintiffs as "GED" and the '761 and '377 patents as the "patents."

muntin bar to a plane spacer frame of an insulating glass unit.[2]  The inventor of both the '761 and '377 patents is Edmund A. Leopold.  Plaintiff GED is the owner of the '761 and '377 patents and plaintiff Newell is the exclusive licensee of the relevant rights under those patents.

The continuing application claims were directed specifically to the clip used to secure the muntin bars to the spacer frame and initially the claims were rejected on the basis of U.S. Patent No. 5,099,626 known as the Seeger patent, also discussed with the '761 patent.  The '377 patent was ultimately distinguished from the Seeger patent because the clip shown in that patent was meant to connect together two crossing muntin bars, not to connect a muntin bar to a spacer frame. In addition, the clip in the Seeger patent latched only at one pair of locations whereas Leopold's clip was meant to latch clips at least at two pairs of locations.

Additionally, during examination of the '377 claims, Leopold removed a limitation from claim one.  The claim originally read: "said latch structure comprising a plurality of relatively rigid latch body members projecting from said clip body structure and a resiliently flexible latch finger connected to each respective latch body member for latching engagement with the spacer frame." This was amended on January 31, 1997 when Leopold removed "resiliently flexible" which was changed to "… said latch structure comprising a plurality of fingers constructed for latching engagement with the spacer frame … ."

The invention at issue is a muntin bar clip which is used to attach muntin bars to the frames of insulated glass windows. The muntin bars are imbedded in the window itself and give the illusion of separate window panes.  Since these muntin bars are for aesthetic purposes only and merely give the illusion of separating panes of glass, they are not "true" muntin bars because

---

[2] A continuation-in-part is an application that adopts much of the specification of a parent application but may also include new matter.  See *Applied Materials v. Advanced Semiconductor Materials Am.*, 98 F.3d 1563, 1580 (Fed.Cir. 1996).  In the case *sub judice*, the '761 patent would be the parent application and '377 would be the continuation-in-part.

they do not physically divide glass.[3] Plaintiffs allege that Defendant's clip infringes claim 9 of the '761 patent and claim 1 of the '377 patent.

### III. Claim Construction Standard of Review

The Court's task is to examine the terms of the patent claims presented by the parties, identify those that require construction and provide the correct construction of those terms. *See Fitness Quest, Inc. v. Monti*, 2007 U.S. Dist. 60195. Patent infringement is determined through a two-step analysis. *Markman,* 52 F.3d at 976. The first step is claim construction, which entails determining the meaning and scope of the patent claim terms allegedly infringed. *Renishaw PLC v. Marposs Societa' Per Azioni,* 158 F.3d 1243, 1247 (Fed. Cir. 1998). The second step involves comparing the construed claims to the allegedly infringing device. *Id.*

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). In construing claims, the court should consider first intrinsic evidence of the record: the patent itself, including the claims, the specification, and, if in evidence, the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also Markman*, 52 F.3d at 979.

A court's examination of the intrinsic evidence in a claim construction analysis begins with the words of the disputed claim itself. *Vitronics Corp.*, 90 F.3d at 1582. The claims define the scope of the right to exclude. *See Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1324 (Fed. Cir. 2002) (quoting *Renishaw PLC,* 158 F.3d at 1248). In the absence of a patentee's "express intent to impart a novel meaning to the claim terms," the words of the claims take on the "'ordinary and customary meanings attributed to them by those of ordinary skill in the art.'"

---

[3] As Plaintiffs point out in their Markman brief, "the muntin bar simulating assembly 130 is referred to here as a muntin bar assembly for simplicity but it is not a true muntin bar assembly because the individual muntin bars do not connect with the panes of light in the windows." Plaintiffs' brief at p.3

*Mars, Inc. v. H.J. Heinz Co.,* 377 F.3d 1369, 1373 (Fed. Cir. 2004) (quoting *Int'l Rectifier Corp. v. IXYS Corp.,* 361 F.3d 1363, 1369 (Fed. Cir. 2004) and *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.,* 334 F.3d 1294, 1298 (Fed. Cir. 2003)). *See also Ben Venue Labs Inc., v. Hospira, Inc.*, 2006 U.S. Dist. LEXIS 83404 (N.D.Ohio Nov. 16, 2006).

The Court in *Premier Int'l Assocs. v. Apple Computer, Inc.*, 512 F. Supp. 2d 737, (E.D.Tex. 2007) recently summarized the general principles of claim construction as set forth in part by *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc):

> In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that 'the *claims* of a patent define the invention to which the patentee is entitled the right to exclude.' 415 F.3d at 1312 (emphasis added)(quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. 415 F.3d at 1312.  The ordinary and customary meaning of a claim term 'is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application.' *Id.*  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention. The patent is addressed to and intended to be read by others skilled in the particular art. *Id.*
>
> The primacy of claim terms notwithstanding, *Phillips* made clear that 'the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.'  *Id.*  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of 'a fully integrated written instrument.'  415 F.3d at 1315 (*quoting Markman*, 52 F.3d at 978).  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  415 F.3d at 1315.

*Premier Int'l Assocs.*, 512 F.Supp.2d at 741-42.

In addition to the words of the claims themselves, the specification is highly relevant to claim construction because it may contain special or novel definitions of claim terms when the patentee has chosen to be his own lexicographer, *see Vitronics Corp.,* 90 F.3d at 1582, or it may

4

help to resolve ambiguity when the ordinary and customary meaning of a term is not sufficiently clear. *See Teleflex,* 299 F.3d at 1325. In sum, the specification is the "'single best guide to the meaning of a disputed term,'" *Phillips,* 415 F.3d at 1315 (*quoting Vitronics Corp.,* 90 F.3d at 1582), and is usually "dispositive,"" *Vitronics Corp.*, 90 F.3d at 1582.

Although claims must be read in view of their specification, the Federal Circuit repeatedly has cautioned against limiting the scope of a claim to the preferred embodiment or specific examples disclosed in the specification. *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303 (Fed. Cir. 1997) (citations omitted). Conversely, both the Federal Circuit and the Supreme Court have cautioned against using the specification to expand the scope of the claims. *Johnson v. Johnston*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (citing *McClain v. Ortmayer*, 141 U.S. 419, 424 (1891) ("The claim is the measure of [that patentee's] right to relief, and while the specification may be referred to, to limit the claim, it can never be made available to expand it.")).

Beyond the specification, the Court may also look to the patent's prosecution history if it is a part of the record in the case. *Markman*, 52 F.3d at 980. "This 'undisputed public record' of proceedings in the Patent and Trademark Office ["PTO"] is of primary significance in understanding the claims." *Id*.; *Phillips*, 415 F.3d at 1317 ("Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent claims.") Again, although the prosecution history "can and should be used" when construing the claims, it "cannot 'enlarge, or diminish or vary' the limitations in the claims." *Markman*, 415 F.3d at 980. (citation omitted).

This final source of intrinsic evidence plays a role similar to the specification in the claim construction analysis. The prosecution history of the patent, the complete record of the

proceedings before the Patent and Trademark Office, "provides evidence of how the PTO and the inventor understood the patent" and should be considered by the court. *Phillips,* 415 F.3d at 1317. "The patent applicant's consistent usage of a term in prosecuting the patent may enlighten the meaning of that term." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1360 (Fed. Cir. 2004). The prosecution history may contain "express representations made by the applicant regarding the scope of the claims." *Vitronics Corp.,* 90 F.3d at 1582. But any limitation found in the history must be "clear and unmistakable." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1307 (Fed. Cir. 2003).

In addition to the intrinsic record, the Court may also consider extrinsic evidence such as dictionaries, encyclopedias, treatises and inventor and expert testimony to assist it in understanding the technology at issue or in determining the meaning or scope of terms in a claim. *Phillips*, 415 F.3d at 1317-18.; see also *Aqua-Aerobic Sys., Inc. v. Aerators, Inc.*, 211 F.3d 1241, 1244-45 (Fed. Cir. 2000); *Hoechst Celanese Corp. v. BP Chemicals LTD.*, 78 F.3d 1575, 1579 (Fed. Cir. 1994). While such evidence is generally considered less reliable than the intrinsic record (for a variety of reasons), the Court is free to consider it, and may do so at any stage of its inquiry. *Id.* at 1318-19; *see also Free Motion Fitness Inc., v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1348-49 (Fed. Cir. 2005).

**IV. Discussion**

The Court has reviewed the parties' arguments advanced at the hearing and more fully set forth in the briefs and exhibits submitted to this Court and finds that the following are the appropriate definitions for terms contained in the patent claims at issue.

**1.      "Fingers"**

6

Although each side initially advanced a competing construction for this term, the parties agreed at the hearing that this term did not require construction. Therefore this Court will not construe it.

**2. "Muntin Bar"**

Plaintiffs' proposed construction of this term is "a strip having the appearance of separating panes of glass in a sash." Defendant suggests a more accurate construction would be: "a hollow bar having the appearance of separating panes of glass in a sash." The remaining dispute centers on use of the term "strip" versus "hollow bar." The Court sees no reason to further define strip and therefore adopts Plaintiffs' construction. Importing a negative limitation into a claim, particularly where the claim language does not contain such a limitation, is generally not favored. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1329-35 (Fed. Cir. 2003). Therefore, muntin bar is defined as "a strip having an appearance of separating panes of glass in a sash."

**3. "Latch means for connecting said clip means to a frame element stiffening flange"**

Defendant requests construction of the above phrase from claim 9 of the '761 patent and proposes the following construction: "A device for fastening the clip means to a frame element stiffening flange." Plaintiffs agree with the above construction and accordingly the Court adopts this construction.[4]

**4. "relatively rigid latch body member"**

Defendant's proposed construction of the above phrase from claim 9 of '761 is: "the latch body member is rigid relative to the finger." Defendant suggests that Plaintiffs' use of the word "relatively" invites comparison and the proposed construction is supported by the specification. Plaintiffs propose the following construction: "the latch body is more rigid than the finger."

---

[4] See Plaintiffs' Response Markman Brief at p.9.

7

Although the two proposals are not far apart, Plaintiffs point out Defendant's use of the word "relatively" in the definition.  The Court is mindful that this method of defining a term should be avoided whenever possible.   The Plaintiffs' proposed construction eliminates this confusion.  The Court is inclined to agree with this reasoning and therefore adopts the Plaintiffs' construction: "relatively rigid latch body member" means "the latch body is more rigid than the finger."

**5.  "one stiffening flange defining an abutment engageable with said latch body member"**

The above language appears in claim 9 of the '761 patent.  Defendant proposes the following definition:  "the latch body member engages a notch in the stiffening flange."  In contrast, Plaintiff proposes that the above phrase means "one stiffening flange provides a structure which directly resists thrust of pressure from the latch body member."

In support of its proposed construction, Defendant argues that the word "abutment" does not appear in the specification and was not in the original claims, and asserts that Plaintiffs are attempting to broaden the scope of the claims beyond what was disclosed.[5]  Defendant argues that "there is no explicit disclosure of any abutment, other than an abutment formed by a notch.  Therefore, there is no basis for allowing a broader term than is warranted in the disclosure."[6]

In response, Plaintiffs argue that it is not the notch which stops the movement of the clip, it is the flange.[7]  Therefore Plaintiffs argue that "it is inconsistent with the specification to say that the abutment is the notch, or that the latch body 'engages' the notch.  After all, a 'notch' is an empty space and cannot be 'engaged.'"

---

[5] See Defendant's Rebuttal Brief on Claim Construction, p.17.
[6] Defendant's brief at 18.
[7] Plaintiffs' brief at 17.

8

In case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims.  *Bates v. Coe*, 98 U.S. 31, 38 (1878).  In determining the meaning to be given claim terms, those terms must be read in the context of the specification because it is the patent specification which, by statute, must contain a "full, clear, concise and exact" description of the invention.  35 U.S.C. §112; *Phillips*, 415 F.3d at 1311.  Thus, claim terms must be construed in a manner consistent with the specification.  *Id*. at 1315.  Although claims must be read in view of their specification, the Federal Circuit repeatedly has cautioned against limited the scope of a claim to the preferred embodiment or specific examples disclosed in the specification.  *Ekchian*, 104 F.3d at 1303.  While claims are interpreted in light of the specification, that does not mean that everything expressed in the specification must be read into the claims.  If that were the situation, there would be no need for claims.  *SRI Int'l v. Matsushita Electric Corp*., 775 F.2d 1107, 1121 (Fed. Cir.1985).

The term notch appears not only in the specification to the '761 patent but also in claim 10.  Claim 10 of '761 reads "The spacer assembly claimed in claim 9 wherein said stiffening flange abutment is defined by a notch for receiving said latch body member and anchoring said clip means."  Claim 10, however, is a dependent claim which contains a specific embodiment which does not appear in claim 9, an independent claim.  It would not be proper, therefore, to read the language of claim 10 into claim 9.  Thus, there is no support for Defendant's reading of the word notch into the construction of the above phrase.

The Court is persuaded that the most sound construction of abutment in the above phrase comes from the definition appearing in Webster's 3rd New International Dictionary which states "the part of a structure that directly receives thrust or pressure."  Therefore, the Court adopts

9

Plaintiffs' construction and "one stiffening flange defining an abutment engageable with said latch body member" means "one stiffening flange provides a structure which directly resists thrust of pressure from the latch body member."

6. **"Resiliently deflectable"**

This language appears in claim 9 of the '761 patent. Plaintiff proposes the following construction: "made from a material capable of withstanding shock without permanent deformation or rupture." Plaintiffs also argue that the terms should be defined as stated in specification[8]: "deflectable toward the latch body member when the clip is inserted and capable of snapping back to its undeflected position after the clip is inserted, to trap the flange between the finger and the clip body." Defendant argues that this term is ambiguous because it is used along with the words "relatively rigid latch body member" and this begs the question, "relative to what?" Defendant proposes the following construction: "capable of being deflected toward the latch body by the stiffening flange, when the clip is inserted into the frame element, and capable of snapping back to its un-deflected position after the clip is inserted into the frame element."[9] Defendant says the term is a functional limitation.

Plaintiffs state that a person of ordinary skill in the art would understand this phrase to mean capable of being deflected and returning to its position after being deflected. The finger is resiliently deflectable relative to the latch body which is more rigid; in other words, the finger would need to deflect more than the latch body. The Court agrees that this definition is adequate when read in the context of the entire claim and that limitations should not be read into the claim from the specifications.

---

[8] Plaintiffs' Brief at p.16.
[9] Defendant's Rebuttal Brief on Claim Construction, p.12.

Plaintiffs' expert, Dr. David Kazmer, testified that a person of ordinary skill in the art would understand the term to mean "capable of being deflected and returning to its position after being deflected."[10] The Court finds that this construction also includes the greater portion of Defendant's proposed construction, "capable of being deflected … and capable of snapping back to its un-deflected position." Since there is no support for adding a limitation as to the material the latch is made for the Court finds the following construction suitable: "resiliently deflectable" means "capable of being deflected and returning to its un-deflected position."

**7.      "Latching locations"**

Plaintiff proposes the construction of this phrase, which appears in Claim 1 of the '377 patent, to be "places on the latch structure where the latch structure engages the spacer frame." Defendant proposes no construction for this particular phrase. Thus, the Court finds that "latching locations" means "places on the latch structure where the latch structure engages the spacer frame."

**8.      "finger for coupling said latch body member to one of said stiffening flanges"**

The above language appears in Claim 9 of '761 patent. Defendant says this means "finger projecting from the latch body member for coupling the latch body member to one of the stiffening flanges." Defendant submits that the location of the finger relative to the latch body member must be included in the construction of the claim to avoid violation of 35 U.S.C. § 112. Plaintiffs believe that the phrase is easily understandable to a lay person and no construction is needed. Plaintiffs further submit that the claim does not have a limitation requiring a specific point from which the finger must project and that while the specific embodiment shown in the drawings teaches a person of ordinary skill to make the clip by having the finger project from the

---

[10] Transcript at p.42.

11

latch body member, the claim is not limited by the specific embodiment.[11] The Court agrees and finds support in *Ekchian,* supra. Therefore, the Court finds that the phrase "for coupling said latch body member to one of said stiffening flanges" does not require construction.

**9. "resiliently deflectable finger"**

The above language appears in claim 9 from the '761 patent. Plaintiffs' proposed construction is: "a projecting piece that is brought into contact with an object to effect, direct or restrain a motion, made from a material capable of withstanding shock without permanent deformation or rupture." Defendant says this means "a finger like projection capable of being deflected toward the latch body by the stiffening flange, when the clip is inserted into the frame element, and capable of snapping back to its un-deflected position after the clip is inserted into the frame element."

The Court has previously adopted a construction for "resiliently deflectable" and the parties have agreed that the term "finger" need not be defined. Therefore, the Court finds no need to adopt a separate construction here.

**10. "said latch structure defining at least two pairs of latching locations engageable with the spacer frame"**

Plaintiff proposes the following construction for this phrase which appears in claim 1 of the '377 patent and is based upon the earlier construction of "latching locations": "the latch structure has at least two pairs of locations where the latch structure can engage the spacer frame." In contrast, Defendant proposes the following construction: "the latch structure is designed to engage the spacer frame at two pairs of locations – each pair of locations are spaced apart along the length of the spacer frame – the locations are notches in the spacer frame." Defendant also offers an alternative construction: "the latch structure is designed to engage at

---

[11] Plaintiffs' Response Markman Brief at p.17.

12

least four separate notches in the spacer frame," and argues that Plaintiffs cannot claim something that was not disclosed in the specification.[12]  Although claims must be read in view of their specification, the Federal Circuit repeatedly has cautioned against limiting the scope of a claim to the preferred embodiment or specific examples disclosed in the specification. See *Ekchian*, 104 F.3d at 1303.  The Court, therefore, declines to adopt Defendant's proposed construction.  The Court finds that "said latch structure defining at least two pairs of latching locations engageable with the spacer frame" means "the latch structure has at least two pairs of locations where the latch structure can engage the spacer frame."

**V. Conclusion**

The terms which required construction shall be construed as reflected in this Memorandum Opinion and Order.

IT IS SO ORDERED.


April 29, 2008                                   __/s/  John  R.  Adams_____
                                                 JUDGE JOHN R. ADAMS

---

[12] Defendant's Rebuttal Brief on Claim Construction, p.19.  In the same brief at p.9, Defendant argues that the claim language "said latch structure engageable with the spacer frame at least at two pairs of locations" was adopted by the Plaintiff in a preliminary amendment filed on 2/15/94 and neither the specification nor the claims in the original parent application mention "at least two pairs of latching locations," and the patentee relied on the drawings to support the claim language.

13