UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GED Integrated Solutions, Inc., | ) | Case No. 5:06CV1327 |
| and Newell Operating Company dba | ) | |
| Ashland Products, Inc. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Durotech International, Inc., | ) | |
| | ) | (Resolves Doc. 89) |
| Defendant. | ) | |

This matter is before the Court upon Defendant's motion to exclude certain evidence filed by Plaintiffs in support of their motion for summary judgment.  For the reasons stated herein, Defendant's motion is DENIED

**I.   Facts**

In their complaint, Plaintiffs alleged that Defendant Durotech International, Inc. has infringed certain claims of U.S. Patent No. 5,313,761 and U.S. Patent No. 5,678,377.  The invention at issue is known as a muntin bar clip.  It is used to attach muntin bars to the frames of insulated glass windows.  Muntin bars are strips of material that are imbedded in a window and give the illusion of separate window panes.  The muntin bars at issue herein are for aesthetic purposes only and merely give the illusion of separating panes of glass.  They are not, therefore, "true" muntin bars because they do not physically divide glass.

On May 21, 2008, Plaintiffs moved for summary judgment on the liability portion of their claim of patent infringement.  On May 29, 2008, Durotech moved to exclude certain evidence

filed in support of the motion for summary judgment. Specifically, Durotech moved to exclude Exhibits C and M that were filed in support of Plaintiffs' motion for partial summary judgment. On June 12, 2008, Plaintiffs responded in opposition to the motion, and on June 23, 2008, Durotech replied to Plaintiffs' response. The matter now appears before the Court.

## II. Legal Standard

Federal Rule of Evidence 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Further, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "established the standard for admissibility of scientific expert testimony under Federal Rule of Evidence 702." *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 907 (6th Cir. 2004). Because *Daubert* requires that "'any and all scientific testimony or evidence admitted [be] not only relevant, but reliable,'" *id.* (quoting *Daubert*, 509 U.S. at 589), this Court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid and [ ] whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (quoting *Daubert*, 509 U.S. at 592-93). The evidence need not be "unassailable" to be admissible. *U.S. v. Turner*, 287 Fed. Appx. 426, 433 (6th Cir. 2008) (quoting *United States v. Mahone*, 453 F.3d 68, 72 (1st Cir. 2006)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

Moreover, *Daubert* provides a "non-exclusive checklist of factors" for this Court to use to "assess[] the reliability of scientific expert testimony." *United States v. Beverly*, 369 F.3d 516, 528 (6th Cir. 2004). Those factors include:

> 1) whether the expert's scientific technique or theory can be, or has been, tested; 2) whether the technique or theory has been subject to peer review and publication; 3) the known or potential rate of error of the technique or theory when applied; 4) the existence and maintenance of standards and controls; and 5) whether the technique or theory has been generally accepted in the scientific community.

*Id.* (citing *Daubert*, 509 U.S. at 592-95; *Hardyman v. Norfolk & W. Ry.*, 243 F.3d 255, 260 (6th Cir. 2001)).

## III.    Legal Analysis

### A.  FEA exhibit

The Court begins its analysis with Exhibit M.  Exhibit M purports to be a finite element analysis ("FEA").  Durotech claims that the FEA "is not accompanied by any description of the methodology used to create it."  In its motion, Durotech states that FEA "is a theoretical approximation of the behavior of a structure when a load is applied, which is modeled by a software program."  Doc. 89 at 12.  Accordingly, Durotech's primary complaint regarding the FEA is that Plaintiffs have not sufficiently identified the manner in which it was created.

In response to this assertion, Plaintiffs filed a supplemental report from their expert, Dr. David Kazmer.  The supplemental report provides a detailed definition of FEA, gives Dr. Kazmer's qualifications for performing such an analysis, and states the underlying data used to perform the FEA at issue.

Initially, Durotech asks that the Court strike the report as untimely.  The Court declines to do so.

Durotech is correct that supplemental expert reports were required to be filed by May 29, 2008.  The report submitted was dated June 11, 2008.  However, the Court does not consider the report to be a supplemental expert report.  Rather, the information contained in the report is nothing more than what the Court would have learned had it held a formal hearing on this *Daubert* challenge.[1]  With respect to the FEA, Dr. Kazmer provides the foundation that was not included in the motion for summary judgment; he does not include a new expert evaluation of any evidence.  Consequently, the motion to strike the supplemental report is denied.

Upon a thorough review of the filings in this matter, the Court notes that Durotech has never challenged the reliability of FEA in general.  Rather, it appears that both parties are in agreement that FEA is a scientifically valid form of evidence.  Accordingly, the Court finds that the supplemental report provides an adequate foundation for the admission of the FEA.

Durotech also challenges the admissibility of the FEA under Fed.R. Evid. 403.  Durotech claims that the FEA uses two different "color scales, one disclosed and the other not disclosed[.]"  Doc. 89 at 12.  Durotech claims that this presentation makes the FEA misleading.  As the Court has been made aware of this fact, there is no concern that the Court will not take that into account when assessing the weight to be given to the FEA.  As such, the Court will not be confused by the color scales used or not used in the FEA.  This particular challenge to the FEA lacks merit.

---

[1] Upon determining the pending motions for summary judgment, the Court will utilize the "Supplemental Report" only as foundational.  To the extent it contains any substantive analysis not contained in a prior report, that analysis will be ignored.

**B. Dr. Kazmer's Report**

1. <u>Failure to test</u>

Durotech first contends that Dr. Kazmer's report is flawed because he failed to perform any actual testing on the products at issue. While the report itself is unclear, the supplement filed in opposition to the motion to exclude evidence is clear.

> Prior to performing my analyses, I examined the Defendant's accused products and design drawings as to design and function. I performed insertion tests, removed the muntin bar clips, and re-examined the Defendant's accused products to verify my understanding of their behavior.

Doc. 93-2. Durotech's assertion that no actual testing took place, therefore, lacks merit.

Next, Durotech argues that Dr. Kazmer's report contains no analysis of the insertion tests and therefore the results of those tests must have been unfavorable to Plaintiffs. The Court is not inclined to engage in such speculation. Rather, the Court finds that Dr. Kazmer's sworn statement that he physically examined the clips at issue prior to engaging in his analysis provides a sufficient foundation for his report.

2. <u>Dr. Kazmer's Assumptions</u>

Durotech next attacks the assumptions made by Dr. Kazmer in his report. Durotech effectively relies upon a "garbage in, garbage out" theory to argue that Dr. Kazmer's report is unreliable. Upon review, the Court finds Dr. Kazmer's report meets the evidentiary standard set forth above.

Durotech first asserts that Dr. Kazmer's assumption that the spacer frame is infinitely rigid is a form of sophistry. Doc. 89 at 7. Durotech alleges that this assumption is demonstrably false, undermining the reliability of Dr. Kazmer's report. Durotech, however, ignores several key factors. First, Dr. Kazmer made numerous assumptions prior to rendering his opinion. Dr. Kazmer also explained the reasons he made these assumptions. For example, Dr. Kazmer first

5

assumed that the spacer frame was infinitely rigid because this lessened the likelihood that Durotech's clip would be found to have a resiliently deflectable finger.  That is, if the steel spacer frame did not flex, it was less likely that the alleged "finger" of the Durotech clip would return to its prior form after insertion.

Durotech also complains that Dr. Kazmer continued to use this assumption despite his own admission that the assumption was not unsupported by fact.  In support, Durotech relies upon Dr. Kazmer's testimony from the *Markman* hearing in this matter.  In that testimony, Dr. Kazmer admitted that he could flex a spacer frame with his fingers.  From this, Durotech concludes that Dr. Kazmer's assumption that the frame is infinitely rigid borders on the ludicrous and is certainly unreliable.  Durotech, however, ignores that Dr. Kazmer continued his testimony by indicating that certain "jigs and fixtures" were used with spacer frames that could result in those frames becoming rigid.  Accordingly, the assumption that the spacer frame was infinitely rigid was based in fact and served a proper analytical purpose.

Durotech argues that the above assumption gave Dr. Kazmer license to make additional unfounded assumptions.  For example, Durotech asserts that Dr. Kazmer was then able to assume that the spacer frame did not deflect outward to accommodate the muntin clip.  Durotech claims that Dr. Kazmer's assumptions effectively accepted Plaintiffs' view of how the clip works without any testing to support those assumptions.  The Court finds that Durotech's challenges do not undermine the *admissibility* of the Report.  As the Sixth Circuit has explained,

> Columbia's argument is unpersuasive because it fundamentally confuses the *credibility and accuracy* of Leitzinger's opinion with its *reliability*.  Contrary to Columbia's assertions, a determination that proffered expert testimony is reliable does not indicate, in any way, the correctness or truthfulness of such an opinion.  Indeed, although "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), a court must be sure not "to exclude an expert's testimony on the

> ground that the court believes one version of the facts and not the other."
> Fed.R.Evid. 702 advisory committee's note, 2000 amend. Instead, the
> requirement that an expert's testimony be reliable means that it must be
> "supported by appropriate validation-i.e., 'good grounds,' based on what is
> known." *Daubert*, 509 U.S. at 590. The task for the district court in deciding
> whether an expert's opinion is reliable is not to determine whether it is correct,
> but rather to determine whether it rests upon a reliable foundation, as opposed to,
> say, unsupported speculation. See Fed.R.Evid. 702 (explaining that expert
> testimony must be based on "sufficient facts or data" and the "product of reliable
> principles and methods"); *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768,
> 792 (6th Cir. 2002) (stating that the district court must determine whether
> proffered expert testimony "rests on a reliable foundation") (internal quotation
> and citation omitted).

*In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529-30 (6th Cir. 2008).

Upon a thorough review of Dr. Kazmer's report, the Court cannot say that his conclusions are based upon "unsupported speculation." Instead, Dr. Kazmer has thoroughly explained the basis for each of his assumptions. While Durotech may disagree with the basis for those assumptions, that does not equate to the assumptions having *no basis*. Consequently, to the extent that Durotech has challenged the report based on Dr. Kazmer's assumptions, the challenge lacks merit.

3. Claim Elements

Finally, Durotech contends that Dr. Kazmer relies upon unsupported speculation when he attempts to correlate the components of the Durotech clips with the claim elements. Specifically, Durotech claims that Dr. Kazmer misused the term "snap ledge." In support, Durotech relies on a source foreign to this litigation, Paul Bonenberger's First Snap Fit Handbook. The Court is in agreement with Plaintiffs that a person of ordinary skill in the art need not have relied on Mr. Bonenberger's book to understand the claims at issue.

Additionally, to the extent that Durotech claims that Dr. Kazmer's report contains "no apparent methodology," the Court finds no merit in such a contention. For example, Durotech

7

seems to complain that Dr. Kazmer divided "one continuous physical structure" into multiple, distinct pieces.  However, Durotech has not identified any scientific principle violated by Dr. Kazmer's opinion.  In contrast, Dr. Kazmer has opined that a person of ordinary skill in the art would find such a division to be logical based upon the shape of the object at issue.  While Durotech may disagree with Dr. Kazmer's analysis, the Court has found no error in his methodology.

The remainder of Durotech's motion consists of little more than its expert disagreeing with Dr. Kazmer's opinion.  At the same time, there is little doubt that Dr. Kazmer disagrees with the opinion rendered by Dr. Angstadt; such is the nature of dueling experts.  However, the simple fact that one expert disagrees with another is insufficient basis for this Court to exclude evidence.  The Court has fully reviewed the extensive briefing and supplemental reports filed in this matter.  Based upon that review, the Court cannot say that any of the reports filed are so lacking in reliability that they must be excluded when ruling on the pending motions for summary judgment.

**IV. Conclusion**

Based upon the reasons stated herein, Defendant's motion to exclude evidence submitted by Plaintiffs is DENIED.


IT IS SO ORDERED.


DATED: January 30, 2009         __/s/  John  R.  Adams_____
                                               JUDGE JOHN R. ADAMS