UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GED Integrated Solutions, Inc., | ) | Case No. 5:06CV1327 |
| and Newell Operating Company dba | ) | |
| Ashland Products, Inc. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Durotech International, Inc., | ) | MEMORANDUM OF OPINION |
| | ) | |
| Defendant. | ) | (Resolves Docs. 82, 86) |

This matter is before the Court upon motions for partial summary judgment (Doc. 86) filed by Plaintiffs GED Integrated Solutions, Inc. ("GED") and Newell Operating Company dba Ashland Products ("Newell"), and Defendant Durotech International, Inc. ("Durotech") (Doc. 82).  The Court has been advised, having reviewed the parties' extensive briefing, exhibits, testimony, pleadings, and applicable law.  For the reasons stated herein, Plaintiffs' motion is DENIED, and Defendant's motion is GRANTED IN PART and DENIED IN PART.

**I.  Facts**

In their complaint, Plaintiffs alleged that Durotech has infringed certain claims of U.S. Patent No. 5,313,761 and U.S. Patent No. 5,678,377.  The invention at issue is known as a muntin bar clip.  It is used to attach muntin bars to the frames of insulated glass windows. Muntin bars are strips of material that are imbedded in a window and give the illusion of separate window panes.  The muntin bars at issue herein are for aesthetic purposes only and merely give

1

the illusion of separating panes of glass. They are not, therefore, "true" muntin bars because they do not physically divide glass.

Plaintiffs allege that Durotech's muntin bar clip infringes claims 9 and 10 of the '761 patent and claim 1 of the '377 patent. In response to the complaint, Durotech filed numerous counterclaims against Plaintiffs. Two of those counterclaims remain pending: a declaratory action for invalidity and a declaratory action for noninfringement. Durotech has moved for summary judgment on its remaining counterclaims. Furthermore, Plaintiffs have moved for summary judgment on their claims of infringement. Both motions now appear before this Court.

**II. Legal Standard**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(c). The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. (quoting Fed. R. Civ. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Moreover, the Court must view a summary judgment motion

2

"in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); Fed. R. Civ. P. 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must by affidavits or as otherwise provided in this rule set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

**III. Legal Analysis**

A. Invalidity

Durotech has asserted that Claims 9 and 10 of the '761 patent and Claim 1 of the '377 are invalid as they are obvious from the prior art. *See* 35 U.S.C. § 103. Section 103 does not permit a patent to issue if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). The Supreme Court recently reviewed its own history with respect to Section 103.

> In *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966), the Court set out a framework for applying the statutory language of § 103, language itself based on the logic of the earlier decision in *Hotchkiss v. Greenwood*, 13 L.Ed. 683 (1851), and its progeny. *See* 383 U.S., at 15-17. The analysis is objective:

3

> "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Id.*, at 17-18. While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls. If a court, or patent examiner, conducts this analysis and concludes the claimed subject matter was obvious, the claim is invalid under § 103.

*KSR Internat'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1734.

> For over a half century, the Court has held that a "patent for a combination which only unites old elements with no change in their respective functions ... obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men." *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152 (1950). This is a principal reason for declining to allow patents for what is obvious. The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.
>
> …
>
> When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill. *Sakraida* and *Anderson's-Black Rock* are illustrative-a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions.

*Id.* at 1739-40.

   **1. A person of ordinary skill in the art**

As Durotech has moved for summary judgment on its theory of invalidity, the Court views the evidence in a light most favorable to Plaintiffs and adopts their proposed level of skill

4

for a person of ordinary skill in the art.[1]  Accordingly, a person of ordinary skill in the art would be one of the following:

a) an individual with a bachelor's degree in mechanical engineering and three years of design experience, or

b) an individual with a bachelor's degree in plastics or chemical engineering and five years of design experience, or

c) an individual with an associate's degree in engineering technology and seven years of design experience, or

d) a high school graduate with ten years of design experience.

## 2. Claims 9 and 10 of the '761 patent

Subparagraphs a through d of Claim 9 describe a spacer assembly for an insulating glass unit.  More specifically, subparagraph e provides as follows:

> said clip means comprising a clip body engaging said one frame element and spanning said stiffening flanges, a muntin bar support member projecting from said body for supporting the muntin bar member relative to the clip body, and latch means for connecting said clip means to a frame element stiffening flange, said latch means comprising a relatively rigid latch body member projecting from said clip body beyond said stiffening flanges between said first and second lateral walls of said one frame element, and a resiliently deflectable finger for coupling said latch body member to one of said stiffening flanges and securing said latch body member against being removed from between said first and second lateral walls of said one spacer frame element, said one stiffening flange defining an abutment engageable with said latch body member to prevent movement of said clip means along said frame element, said clip body and the other stiffening flange secured together at a location spaced laterally from said stiffening flange abutment.

Furthermore, Claim 10 provides:  "The spacer assembly claimed in Claim 9 wherein said stiffening flange abutment is defined by a notch for receiving said latch body member and anchoring said clip means."

The Court has previously defined many of the terms contained in subparagraph e.  Moreover, while exceedingly difficult to read, the above provision describes a rather simple

---

[1] The Court notes that Durotech's expert is in agreement with this definition of a person of ordinary skill in the art.

5

device.  The muntin clip attaches a muntin bar to the spacer frame by acting like simple snap-fit technology.  The fingers of the clip deflect inward through the stiffening flanges of the spacer frame and then return to their prior state upon insertion, securing the clip in place.  Durotech contends that these Claims are obvious from the prior art.  Upon review of that prior art, the Court agrees.

3. **Prior Art**

<u>The Seeger patent</u>

The parties do not dispute that the Seeger patent constitutes prior art.  Furthermore, the Court notes that the Seeger patent was disclosed to the patent examiner by Plaintiffs during the prosecution of their patent.

The Seeger patent describes a "unitary connector for connecting hollow muntin bars transversely includes one end with barbed projections or hooks which engage openings in the planar sides of the tubular muntin bars and which also include an opposed plug which engages the hollow open end of a muntin bar."  Effectively, the Seeger patent discloses a clip that connects two muntin bars.  Accordingly, the Seeger patent makes no mention of using the clip with a spacer frame, nor does it mention the use of the clip with any element that has stiffening flanges.

<u>The Lingemann patent</u>

The Lingemann patent discloses a latch structure in which the deflectable component of the latch structure is sized to engage a borehole on a box frame spacer.

<u>The Pandell patent</u>

The Pandell patent consists of a planar polygonal plane similar to that disclosed in subparagraphs a through c of Claim 9.  The Pandell patent's Claim 1 reads in pertinent part: "A

6

multi-glazed window having at least two window panes and a spacer frame between said panes, said frame comprising rigid, hollow space rails of substantially closed, rectangular cross-section[.]"

### 4. Obviousness

The Court agrees with Durotech that the clip disclosed in the Seeger patent is substantially similar to the clip disclosed in the Leopold patent at issue. Furthermore, the Court finds no merit in the contention of Plaintiffs' expert that the Seeger and Lingemann patents provide little value because they utilize "solid box beams" that would need to be converted to a U-shaped channel having stiffening flanges, notches, and other figures.

Given the level of a person of ordinary skill in the art described above, a person with a bachelor's degree in mechanical engineering and three years of design experience, the Court finds that Claims 9 and 10 should have been obvious from the prior art.

The Seeger patent discloses a structure similar to that disclosed in the '761 patent. The Seeger patent describes hooks projecting from the clip to "join" the muntin bars. A person of ordinary skill in the art would recognize that the "hook" consists of a latch body member and a resiliently flexible finger, the same elements contained in the '761 patent.

Furthermore, a person of ordinary skill in the art reviewing Lingemann would immediately recognize that a Seeger clip could be used not only to join muntin bars, but to secure a muntin bar to a spacer frame. Finally, the Pandell patent clearly disclosed a spacer frame assembly with stiffening flanges.

Plaintiffs appear to contend that nothing in the Seeger patent suggests using a variation of that design in a Lingemann frame or any other frame for that matter. Plaintiffs, however, ignore that their design is relatively simplistic snap-fit technology. To adapt the Seeger patent to

7

connect muntin bars to a Lingemann frame, an engineer would need only to widen the hooks on the Seeger clip. The Court is convinced that it would be obvious to a person of ordinary skill in the art that such an adaptation could occur.

Finally, the Seeger clip was designed to be used as follows: "the connector has hooks that slide through opening in the wall of a bar and lock against pulling out to insure a tight connection." Essentially, the Seeger clip's fingers were forced through bore holes and then snapped back into place, holding the clip in place. A person of ordinary skill in the art would immediately recognize that the bore holes could be replaced by the stiffening flanges presented in the frame contained in the Pandell patent. The fingers ("hooks" in the Seeger patent) would then abut a notch in the stiffening flanges disclosed in Pandell.

As noted above, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR Internat'l Co.*, 127 S.Ct. at 1739. Claims 9 and 10 do just that. Snap-fit technology using resiliently flexible fingers was clearly disclosed by Seeger. Further, any mechanical engineer with significant design experience would know that the Seeger clip could be used to connect not only muntin bars to one another, but also to spacer frames. Finally, it would be obvious to any such engineer that the bore holes required for use with the Seeger clip could easily be replaced by the stiffening flanges depicted in Pandell. The results of combining these elements through known methods were predictable.

Finally, the Court has considered the secondary considerations offered by Plaintiffs in support of their validity argument, including the commercial success of its products. The Court does not find that success sufficient to overcome the obvious nature of the Claims at issue.

8

Accordingly, the Court concludes that Claims 9 and 10 are invalid as they were obvious at the time the patent was issued.

### 5. Claim 1 of the '377 patent

Claim 1 encompasses the clip only and provides as follows:

1. A clip for securing a muntin bar to a planar spacer frame of an insulating glass unit comprising:

    a. bar support for engaging a muntin bar, said bar support projecting from said clip in a first direction and having opposed sides respectively bounded by first and second planes extending in said first direction, said clip being adapted to be installed such that said first and second planes extend parallel to a plane defined by said planar spacer frame; and,

    b. latch structure for securing the clip to the spacer frame;

    c. said latch structure comprising a plurality of fingers constructed for latching engagement with the spacer frame;

    d. said latch structure defining at least two pairs of latching locations engageable with the spacer frame, the latching locations of each pair spaced apart transversely relative to said first and second planes with said first and second planes disposed therebetween and each latching location spaced away from the closest one of said planes.

Durotech contends that Claim 1 is obvious based upon the prior art.

Plaintiffs offer very little argument in opposition to this contention.  First, Plaintiffs contend that due to the number of prior references utilized by Durotech, the matter must be submitted to a jury for consideration.  However, upon review of the relevant case law, the Court has found no magic number of prior references that would require submission of the matter to a jury.

> The criterion, however, is not the number of references, but what they would have meant to a person of ordinary skill in the field of the invention.  In *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1383, 231 USPQ 81, 93 (Fed.Cir. 1986), cert. denied, 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987), the court held that a combination of about twenty references that "skirt[ed] all

9

> around" the claimed invention did not show obviousness.  In other instances, on other facts, we have upheld reliance on a large number of references to show obviousness.  Compare *In re Miller*, 159 F.2d 756, 758-59, 72 USPQ 512, 514-15 (CCPA 1947) (rejecting argument that the need for eight references for rejection supported patentability) with *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1149, 219 USPQ 857, 860 (Fed.Cir. 1983) (where teachings relied upon to show obviousness were repeated in a number of references, the conclusion of obviousness was strengthened).  *See also, e.g., In re Troiel*, 274 F.2d 944, 947, 124 USPQ 502, 504 (CCPA 1960) (rejecting appellant's argument that combining a large number of references to show obviousness was "farfetched and illogical").

*In re Gorman,* 933 F.2d 982, 986 (Fed.Cir. 1991).  Rather, "[w]here, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR Internat'l Co.*, 127 S.Ct. at 1745-46.

Furthermore, the Court finds no merit in Plaintiffs' contention that the total number of prior references relied upon here, roughly 5, compels the conclusion that Claim 1 was not obvious.  "Common sense teaches … that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 1742.  This is true because "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id.*  This line of reasoning from the U.S. Supreme Court undermines the theory relied upon by Plaintiffs in which Plaintiffs appear to take the view that since none of the individual prior references include each element of Claim 1, then Claim 1 cannot be said to be obvious.  "The large number of cited references does not negate the obviousness of the combination, for the prior art uses the various elements for the same purposes as they are used by appellants, making the claimed invention as a whole obvious in terms of 35 U.S.C. § 103." *In re Gorman*, 933 F.2d at 987.

Plaintiffs offer only one substantive argument in response to the arguments raised by Durotech.  Plaintiffs assert that the prior art relied upon by Durotech involved box spacer frames

10

and not U shaped frames with stiffening flanges.  As detailed above, however, a person of ordinary skill in the art would have been familiar with the numerous patents that utilized a U shaped frame having stiffening flanges, as seen in the Pandell patent discussed above.  Adapting the Lingemann patent for use with U shape spacer frame would have been obvious to a person of ordinary skill in the art.

Additionally, as detailed above, Lingemann disclosed a muntin bar clip that has a latch structure comprised of a plurality of fingers.  In addition to Lingemann, the prior art relied upon by Durotech includes the Palmer patent and the Rackard patent.  The Palmer patent discloses a tree for a rectangular muntin bar, and Rackard discloses the typical dimensions of a rectangular muntin bar.  Plaintiffs do not dispute in their brief in opposition that Palmer and Rackard contain these elements.  Instead, Plaintiffs again rely upon their argument that Durotech has chosen the prior art "a la carte" without any rational underpinning.  The Court finds no merit in this argument.  Lingemann, Rackard, Palmer, and Pandell all concern patents in the same field as the '377 patent.  As such, there is a rational underpinning for using each of them.

Plaintiffs also contend that Durotech's proposed combinations of prior art were conducted "without consideration of whether they are compatible with each other and without consideration of the difficulties of the interface geometry, material properties and manufacturing processes associated with attempting to 'mix and match' interfitting components."  However, a mechanical engineer with three years of design experience would be well aware of these difficulties and quite adept at resolving any such difficulties.  As such, Plaintiffs contention that the combination of prior art should be ignored is not well taken.

The Lingemann patent discloses a clip for connecting a muntin bar to a spacer claim.  A mechanical engineer with any design experience could quickly review Rackard to ascertain the

11

standard size of a rectangular muntin bar. Moreover, Palmer discloses a tree for rectangular muntin bar. Combining these elements would be obvious to a person of ordinary skill in the art. Furthermore, both parties' experts appear to agree that the "tree" portion of the clip is interchangeable with any clip base. "[T]he trees are interchangeable as desired with the bases of the clip." Doc. 82-2 at 28 (Defendant expert's report). "Q. And, in fact, the latching mechanism disclosed in the Leopold patents can be used with a variety of tree, correct? A. Yes." (Plaintiff expert's testimony at the *Markman* hearing, p. 73). In turn, using that combination with a spacer frame that has stiffening flanges, rather than a box frame, would be obvious to a person of ordinary skill in the art. The stiffening flanges operate in much the same manner as the edge of the bore holes for which Lingemann clip was designed to be used, i.e., they provide a surface for the lock feature (the "finger") to engage. Accordingly, the Court finds that Claim 1 of the '377 is invalid as it was obvious in light of the prior art.[2]

The Court concludes by noting that the parties could have been more helpful in their briefing of these issues. While containing numerous arguments on nearly every topic, the briefs rarely contain any in-depth analysis of the core issues. The Court was effectively required to educate itself regarding the subject matter at hand. In the future, the parties would be advised to acknowledge the Court is not a subject matter expert on each patented invention and therefore the parties should endeavor to educate the Court with particularized briefing.

**V. Conclusion**

Based upon the reasons stated herein, Defendant's request for a declaration of noninfringement is DENIED AS MOOT. Defendant's motion for summary judgment on the

---

[2] The Court has likewise considered and rejected the secondary considerations offered by Plaintiffs in support of the validity of Claim 1.

issue of invalidity is GRANTED.  Judgment on the complaint is entered in favor of Defendant, and Claims 9 and 10 of the '761 patent and Claim 1 of the '377 patent are found to be invalid.

This is a final appealable order pursuant to Civ.R. 58.

IT IS SO ORDERED.


DATED: March 3, 2009            \_\_/s/  John  R.  Adams_____
                                                      JUDGE JOHN R. ADAMS